USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/12/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
KEITH MONTEREY,

                        Plaintiff,

                      -against-

CITY OF NEW YORK, SGT. WILLIAM HART,
P.O. DANIEL ESTEVEZ, P.O. ROGER
SAVAGE, and SGT. JOEL MEDINA,

                        Defendants.
-------------------------------------------------------------- X

17-CV-4477 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

This action stems from Plaintiff Monterey Keith's[1] arrest by several members of the New York City Police department ("NYPD") on April 17, 2016. Plaintiff claims that he sustained a shoulder injury after NYPD officers grabbed him, pushed him to the ground, handcuffed him, and then "lifted him up solely by his arms which were handcuffed behind his back." Pl. Mem. of Law, Dkt. 82 at 2. The Court previously denied Defendants' Motion for Summary Judgment as to Plaintiff's claims for false arrest and denial of a fair trial as to Defendant Hart, and excessive force and failure to intervene as to Defendants Hart and Savage. Dkt 68. Now before the Court is Defendants' motion to exclude the testimony of Dr. Nidhi Jain ("Dr. Jain"). Dkt 78. Because Dr. Jain is qualified to testify as an expert witness and her proffered testimony is relevant and reliable, Defendants' motion to exclude her testimony is DENIED.

## I.    BACKGROUND

On April 17, 2016, Plaintiff was in the vicinity of East 120th Street and 1st Avenue in New York City when his friend had a medical emergency. Am. Compl., Dkt. 25 ¶ 13. After

---

[1]     Plaintiff's name is "Monterey Keith," but his name was inadvertently reversed in the case caption.

Plaintiff's friend was placed in an ambulance and the doors were closed, Plaintiff claims he approached the ambulance to ask Defendant officers if he could retrieve his friend's belongings or ride to the hospital with him. Am. Compl. ¶ 14. Plaintiff alleges that after making this request, "without any warning or justification," Defendants "forcefully shoved" Plaintiff to the ground. Am. Compl. ¶ 15. Plaintiff claims the NYPD officers "aggressively pulled his arms behind his back" to handcuff him and then "forcefully pulled him off the ground … solely by the arms." Pl. Mem. of Law at 2.

As a result of the force allegedly exerted by Defendants, Plaintiff claims that he experienced "sudden and severe pain in his left shoulder." Pl. Mem. of Law at 2. Plaintiff was taken to Metropolitan Hospital for assessment; x-rays revealed no break or dislocation in his shoulder but an MRI was not done. *Id.* Plaintiff claims his shoulder pain persisted, ultimately leading him to visit his physician, Dr. Alba Zilberman ("Zilberman"). *Id.* On November 28, 2016, Dr. Zilberman conducted a physical examination of Plaintiff and ordered an MRI. *Id.* On December 21, 2016, Plaintiff had an MRI of his left shoulder done at Lenox Hill Radiology. *Id.*, Cohen Decl., Dkt. 81 Ex. A. Dr. Jain reviewed the MRI and noted: (1) "mild-moderate supraspinatus tendinosis, mild infraspinatus tendinosis with a low-grade concealed interstitial delaminating tear, [and] mild subscapularis tendinosis, [but] no high-grade or retracted rotator cuff tear"; (2) "Os acromiale with edema at the synchondrosis, suspicious for motion"; (3) "mild acromioclavicular joint osteoarthrosis with findings suggestive of coexisting distal clavicular osteolysis"; and (4) [a] "low-grade sprain of the inferior glenohumeral ligament." Cohen Decl. Ex. B.

Plaintiff plans to call Dr. Jain[2] as his treating radiologist to testify that his shoulder injury is consistent with having his arms forcefully pulled behind him during his arrest. Cohen Decl. Ex. C. In formulating her expert report, Dr. Jain reviewed and relied on Plaintiff's medical records from Metropolitan Hospital Center, dated April 17, 2016, Plaintiff's Medical Record from CityMD's Williamsburg Clinic, dated April 19, 2016, the Radiology Report for Plaintiff's MRI performed on December 21, 2016, and Plaintiff's deposition transcript from June 27, 2018. Jain Report, Dkt. 81-7 at 1. Dr. Jain's report states that the MRI shows "evidence of a low-grade sprain" of Plaintiff's "inferior glenohumeral ligament. *Id.* at 2. Dr. Jain asserts that "[t]his is an unusual finding unless there has been trauma with sudden force on the glenohumeral joint, as the inferior glenohumeral ligament is one of the stabilizers of the joint." *Id.* Dr. Jain concludes that Plaintiff "suffered trauma to his left shoulder while having his arms pulled behind his back from a prone position" and that the "inferior glenohumeral ligament injury observed on the left shoulder MRI is consistent with this mechanism of injury." *Id.* Dr. Jain bases her opinion that Plaintiff's injury is consistent with "sudden force" on the fact that "the ligament would serve in counteracting posterior force on the shoulder and limit posterior shoulder dislocation." *Id.* Dr. Jain also notes that this type of injury would not be detected on radiographs. *Id.*

Defendants seeks to exclude Dr. Jain's testimony on the grounds that she is not qualified to offer an opinion on Plaintiff's shoulder injury and that her proffered testimony is neither relevant nor reliable. Defs.' Mem. of Law, Dkt. 79 at 1.[3]

---

[2]  Dr. Jain is a board-certified radiologist at Lenox Hill Radiology. Cohen Decl. Ex. G. Dr. Jain received her M.D. in 2010, completed her residency in Diagnostic Radiology in 2015, and completed a fellowship in Musculoskeletal Radiology in 2016. *Id.*

[3]  Defendants' motion also seeks to exclude Plaintiff's own testimony regarding his shoulder injury. Defs'. Mem. of Law at 13. This request exceeds the scope of a Motion to Preclude Expert testimony and will not be considered.

## II.     DISCUSSION

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides that a person "qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

While the proffering party bears the burden of establishing admissibility under Rule 702 by showing that (1) the expert is qualified; (2) the proposed opinion is based on reliable data and methodology; and (3) the proposed testimony would be helpful to the trier of fact, the district court acts as the "ultimate gatekeeper" against unreliable expert testimony. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks omitted); *see e.g. Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 426 (S.D.N.Y. 2015), *aff'd sub nom. Estate of Jaquez by Pub. Adm'r of Bronx Cty. v. City of New York*, 706 F. App'x 709 (2d Cir. 2017).

The threshold question for the Court is whether the "proffered expert testimony is relevant." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). If the proposed testimony is relevant, the Court must then determine "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." *Id.* (internal citation and quotation marks omitted). The Supreme Court has laid down several factors to consider in

making this inquiry, including "whether a theory or technique . . . can be (and has been) tested"; "whether the theory or technique has been subjected to peer review and publication"; whether uniform "standards controlling the technique's operation" exist; and whether the theory or technique enjoys "general acceptance" within the relevant scientific or professional community. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993) (internal quotation marks omitted). The Court's ultimate objective is to "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

### A. Relevance

Defendants argue that Dr. Jain's conclusions are not relevant and therefore must be excluded. *See* Def. Mem. of Law at 10. Testimony is relevant if it "assist[s] the trier of fact" in understanding and resolving the primary issues in the case. *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009). Relevance can be understood as a question of "fit"— "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (internal citation omitted).

Here, Plaintiff asserts claims for unlawful arrest and excessive force. *See* Am. Compl. Plaintiff argues that Dr. Jain's testimony regarding an injury sustained from the alleged unlawful arrest and excessive force is directly relevant to both claims, particularly to prove causation and damages. Pl. Mem. of Law at 19. The Court agrees. In addition to corroborating Plaintiff's claim that the officers pulled him up by his arm after he was rear-cuffed, evidence of Plaintiff's injury tends to show that excessive force was used. Additionally, the presence of a sprain eight months after the incident is relevant on the question of damages. Because Plaintiff's shoulder injury "is at the heart of Plaintiff's allegations" of excessive force, testimony regarding the injury

5

"should therefore not be kept from the jury on relevance grounds." *Reyes v. Delta Dallas Alpha Corp.,* No. 92-CV-4418, 2000 WL 526851, at *2 (S.D.N.Y. May 2, 2000).

Defendants also argue that Dr. Jain's testimony is irrelevant and unhelpful to the jury because the report does not explicitly opine that the injury was *caused* by Defendants' conduct. Defs.' Mem. of Law at 11. The Court disagrees. Dr. Jain's report expressly indicates that the injury "is consistent" with the alleged excessive force and opines that Plaintiff's injury is "unusual *unless* there has been trauma with sudden force on the glenohumeral joint as the inferior glenohumeral ligament is one of the stabilizers of the joint." Jain Report at 2 (emphasis added). This is some evidence that Defendants' use of "sudden force" caused Plaintiff's ligament sprain and is therefore helpful and relevant evidence. *See In re Fosamax Prods. Liab. Litig.,* 645 F. Supp. 2d at 173.

Because the substance of Dr. Jain's testimony is "both material and probative," it will not be excluded on relevance grounds. *Reyes,* 2000 WL 526851, at *2.

### B. Qualifications

Defendants also argue that Dr. Jain is not qualified to offer an expert opinion because she is a radiologist, not an orthopedist. Defs.' Mem. of Law at 7. The Court may admit expert testimony if the witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Expert qualification requirements are liberally construed; a medical doctor need not be a "specialist in the exact area of medicine implicated by the plaintiff's injury" in order to serve as an expert witness. *In re Fosamax Prod. Liab. Litig.,* No. 06-CV-7631, 2009 WL 4042769, at *6 (S.D.N.Y. Nov. 23, 2009), *aff'd sub nom. Flemings v. Merck & Co.,* 399 F. App'x 672 (2d Cir. 2010); *see McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir. 1995) (rejecting the argument that the expert "had to be a specialist in environmental medicine to provide expert testimony" regarding an injury allegedly caused by

glue fumes as "an unwarranted expansion of the gatekeeper role announced in *Daubert.*"); *Lyons v. Robinson,* 242 F.3d 366 (2d Cir. 2000) ("A physician need not be a specialist in a particular field in order to qualify as a medical expert."). Moreover, if an expert has educational and experiential qualifications in a field "closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *In re Zyprexa Prods. Liab. Litig.,* 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (citing *Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 80 (2d Cir. 1997)). Quibbles regarding a witness's qualifications or lack of specialization go to the weight of the expert's testimony, not to its admissibility. *McCullock*, 61 F.3d at 1043-44; *Stagl*, 117 F.3d at 81-82; *Fernandez v. Chios Shipping Co.,* 542 F.2d 145 (2d Cir. 1976).

Here, Dr. Jain is a medical doctor and a board-certified radiologist with specialized training in Diagnostic Radiology and Musculoskeletal Radiology. Cohen Decl. Ex. G. Although Dr. Jain is not an orthopedist, the fields of radiology and orthopedics are closely related. *See Silvas v. Ghiatas*, 954 S.W.2d 50, 54 (Tex. App. 1997) ("it is common knowledge that orthopedic surgeons and radiologists work closely together [and that] their professions are interrelated and their specialties intertwined."). As a result, based on Dr. Jain's training in Diagnostic Radiology and the overlap between the fields of orthopedics and radiology, Dr. Jain is qualified to evaluate Plaintiff's MRI, diagnose a "sprain of the inferior glenohumeral ligament," and opine as to how such a sprain might have occurred. *Reynolds v. Am. Airlines, Inc.,* No. 14-CV-2429, 2017 WL 5613115, at *3 (E.D.N.Y. Nov. 21, 2017) (holding that a radiologist was qualified to interpret diagnostic films and offer an expert opinion on the cause of injuries observed on those films because such an opinion was "clearly within the scope of her expertise and training as a medical doctor and radiologist"); *Williams v. Slack*, 438 F. App'x 848, 851 (11th Cir. 2011) ("there is no reason to believe that only an orthopedic specialist could

identify a fracture from an x-ray that a radiologist could not."). In short, Defendants' complaint that Dr. Jain is not an orthopedist goes to the weight of her opinion, not to its admissibility. *See McCullock*, 61 F.3d at 1043-44. Defendants are free to probe Dr. Jain's experience in diagnosing ligament sprains and their potential causes on cross-examination.

### C. Reliability

Defendants argue that Dr. Jain's conclusions are unreliable and therefore inadmissible. Defs.' Mem. of Law at 7-10. In all cases, "the test of reliability is flexible," and a district court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.,* 526 U.S. at 141–42 (emphasis in original and internal quotation marks omitted). "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note; *see Kumho Tire Co.,* 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). District courts should only exclude expert evidence based on questionable reliability when "the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions;" cross-examination is the appropriate tool by which "reliable, albeit debatable, expert testimony" can be challenged. *Amorgianos,* 303 F.3d at 267 (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 746 (3d Cir. 1994); *Daubert,* 509 U.S. at 590.)

In considering the reliability of expert medical testimony, a variety of factors must be considered, including the doctor's training and practical experience, as well as whether the doctor reviewed the patient's medical records, performed diagnostic tests, and examined the patient. *See e.g. Figueroa v. Bos. Sci. Corp.,* 254 F. Supp. 2d 361, 366 (S.D.N.Y. 2003); *Reyes*, 2000 WL 526851, at *2; *Bermudez v. City of New York*, No. 15-CV-3240, 2019 WL 136633, at *13 (E.D.N.Y. Jan. 8, 2019); *Reynolds ,* 2017 WL 5613115, at *3.

8

In this case, Defendants argue that Dr. Jain's proffered testimony is unreliable because she: failed to physically examine Plaintiff; failed to explain how the sprain is consistent with Defendants' alleged use of force; and failed to provide a differential diagnosis. Defs.' Reply Mem. of Law, Dkt. 83 at 5-10.

Because a physical examination is not a prerequisite for a medical expert to testify, the fact that Dr. Jain did not physically examine Plaintiff does not render her opinion unreliable. *Bermudez*, 2019 WL 136633, at *13 ("Evaluation of the patient's medical records, like performance of a physical examination, is a reliable method of concluding that a patient is [injured] even in the absence of a physical examination.") (quoting *In re Paoli,* 35 F.3d at 762)); *Reynolds,* 2017 WL 5613115, at *3 (holding that because the radiologist expert had examined the patient's diagnostic films, her testimony was admissible even though she did examine the patient directly); *Figueroa,* 254 F. Supp. 2d at 366 (admitting expert testimony from a doctor who had not physically examined the patient on the grounds that his years of education, training and practical experience made his testimony sufficiently reliable); *Reyes,* 2000 WL 526851, at *2 (admitting a medical expert's testimony as reliable even in the *absence* of MRI results because "the doctor came to a medical conclusion based on a number of factors, including his care and treatment of plaintiff, and his own practical experience.").

Dr. Jain based her opinion on a review of Plaintiff's medical records, an analysis of his MRI results, and a review of his deposition transcript. *See* Jain Report at 1. Those sources of information provided Dr. Jain with "good grounds" for her opinion and ensure that her opinion is "adequately grounded in the methods and procedures of science" and based on "more than subjective belief or unsupported speculation." *Amorgianos,* 303 F.3d at 267*; Daubert,* 509 U.S. at 590, *Franz v. New England Disposal Techs., Inc.,* No 10-CV-201, 2016 WL 3344187, at *3 (W.D.N.Y. June 16, 2016) (deeming medical expert's testimony regarding the cause of

9

plaintiff's injury to be reliable because it was based on "objective medical tests including plaintiff's diagnostic X-Rays and MRIs").

Defendants complain that Dr. Jain failed to explain "how her finding on the MRI evidences a sprain" and why the sprain is consistent with Defendants' alleged use of force. Defs.' Mem of Law at 8-10. Although Dr. Jain's report does not provide a detailed explanation of the step-by-step process she used to interpret Plaintiff's MRI, her extensive experience as a diagnostic radiologist renders her opinion that the MRI evidenced a sprain reliable. *See Franz*, 2016 WL 3344187, at *3 (explaining that the substantial experience of plaintiff's physicians in diagnosing injuries related to collisions and their causes "obviate[ed] the need for overly rigid requirements for detailed explanations of underlying scientific methodologies.") (citing *McCullock,* 61 F.3d at 1043).

The Court also disagrees with Defendants' argument that Dr. Jain failed to explain her conclusion that Plaintiff's sprain is consistent with the use of sudden force. Dr. Jain's report explains that the glenohumeral ligament stabilizes the shoulder joint and serves to *counteract* posterior force and limit shoulder dislocation. As a result, a sprain of that ligament would be unusual "unless there has been trauma with sudden force." Jain Report at 2. Although Defendants may disagree with that opinion, it is based on a reliable and adequate foundation; Dr. Jain relied on her extensive experience as a medical doctor and a diagnostic radiologist, Plaintiff's medical records, and Plaintiff's MRI. Any criticism of Dr. Jain's conclusion goes to the weight, not the admissibility, of her testimony and can be addressed through effective cross-examination. *In re Zyprexa,* 489 F. Supp. 2d at 285; *In re Mirena IUD Prod. Liab. Litig.,* 169 F. Supp. 3d 396, 420 (S.D.N.Y. 2016) ("a lack of specific citation in her report goes to the weight of [the expert's] opinions, not their admissibility.").

Finally, Defendants argue that Dr. Jain's proffered testimony is unreliable because she failed to provide a differential diagnosis. Defs.' Reply Mem. of Law at 5-8. A differential diagnosis is a "patient-specific process of elimination that medical practitioners use to identify the 'most likely' cause of a set of signs and symptoms from a list of possible causes." *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249 (2d Cir. 2005). A differential diagnosis may not be required when: (1) the expert is the plaintiff's treating physician; (2) the link between the injury and its cause is obvious; and (3) there are "other sufficient indicia of reliability," such as reviewing medical records and interviews with the plaintiff. *Tardif v. City of New York*, 344 F. Supp. 3d 579, 602 (S.D.N.Y. 2018) (citing *Matthews v. Hewlett-Packard Co.,* No. 15-CV-3922, 2017 WL 6804075, at *4 (S.D.N.Y. Dec. 22, 2017)).

The Court agrees with Plaintiff that Dr. Jain was not required to perform a differential diagnosis because she is Plaintiff's treating physician and because she relied on his medical records and his deposition transcript in forming her opinion. Pl. Mem. of Law at 14-15. The "critical factor" in determining whether a physician is a treating physician is whether the doctor was retained to treat the patient or to provide expert testimony. *Zanowic v. Ashcroft,* No. 97-CV-5292, 2002 WL 373229, at *2 (S.D.N.Y. Mar. 8, 2002). Here, Plaintiff consulted Dr. Jain eight months before filing this action. Pl. Mem. of Law at 15. Thus, Dr. Jain qualifies as a treating physician. In addition, although Dr. Jain did not conduct a differential diagnosis, her review of Plaintiff's medical records and deposition transcript provide "other sufficient indicia of reliability." *See Tardif*, 344 F. Supp. 3d at 602.

Moreover, although Dr. Jain did not conduct an explicit differential diagnosis, her report implicitly eliminates other potential causes of Plaintiff's injury by stating that Plaintiff's injury is unusual "unless there has been trauma with sudden force." Jain Report at 2. Thus, although Defendants quarrel with her opinion because it did not expressly consider whether his injury

11

could have been caused by playing basketball or from heavy lifting at work, Defs.' Mem. of Law at 9, her conclusion that Plaintiff's injury is rare in the absence of "trauma with sudden force" implicitly rules out other potential causes. *See* Jain Report at 2. In any event, to the extent that Dr. Jain did not "fully consider and rule out all possible causes, such deficiencies … go to the weight of the evidence," not its admissibility. *Golod v. Hoffman La Roche,* 964 F. Supp. 841, 859 (S.D.N.Y. 1997); *Figueroa,* 254 F. Supp. 2d at 366; *McCullock,* 61 F.3d at 1044. Defendants are free to explore Dr. Jain's opinion regarding the cause of the ligament sprain during cross-examination. *Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to preclude Dr. Jain from offering her report or testifying is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at docket entry 78.

**SO ORDERED.**

Date: **November 12, 2019**  
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**